838 F.2d 1483
 10 Fed.R.Serv.3d 475
 Robert ARGENTO, Joseph Sansone and Bennie Lenard, Plaintiffs-Appellees,
v.
VILLAGE OF MELROSE PARK, Defendant-Appellant.
Bennie LENARD, Plaintiff-Appellee,
v.
Robert ARGENTO and Joseph Sansone, Defendants,
and
Hartford Accident & Indemnity Co., Garnishee-Defendant-Appellant.
Bennie LENARD, Plaintiff-Appellee,
v.
VILLAGE OF MELROSE PARK, Defendant-Appellant.
Bennie LENARD, Plaintiff-Appellee,
v.
Robert ARGENTO and Joseph Sansone, Defendants-Appellants.
 Nos. 86-1960, 86-2080, 86-3131 and 86-3132.
 United States Court of Appeals,
Seventh Circuit.
 Jan. 27, 1988.
As Amended on Denial of Rehearing and Rehearing En Banc
March 14, 1988.
 
 Joshua G. Vincent, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Thomas D. Allen, Wildman, Harrold, Allen & Dixon, Stephen E. Sward, Rooks, Pitts & Poust, Chicago, Ill., for defendant-appellant.
 Cecile Singer, Singer & Stein, Chicago, Ill., for plaintiff-appellee.
 Before CUMMINGS, COFFEY and MANION, Circuit Judges.
 CUMMINGS, Circuit Judge.
 
 
 1
 In January 1977, Bennie Lenard, a black man, was involved in a traffic accident in Melrose Park, Illinois. The Melrose Park police were called and Lenard was subsequently arrested and taken to the police station. While in police custody Lenard was severely injured and eventually spent thirty-nine days in a hospital recovering from the injuries. In 1977 Lenard filed suit against the Village of Melrose Park and four of its police officers.[1] The suit alleged various claims under 42 U.S.C. Secs. 1983 and 1985. In his first jury trial, Lenard was awarded $360,000 in damages and $181,000 in attorneys' fees. The jury, however, did not find any of the defendants liable under Sec. 1983 for beating Lenard. The defendants appealed and we reversed the judgment in most parts. Lenard v. Argento, 699 F.2d 874 (7th Cir.1983), certiorari denied, 464 U.S. 815, 104 S.Ct. 69, 78 L.Ed.2d 84 ("Lenard I "). The only claim remaining on remand was a Sec. 1985(3) claim against officers Robert Argento and Joseph Sansone, in their individual capacities, for "a conspiracy to deprive [Lenard] due course of justice and equal protection of the law," id. at 880, as well as a redetermination of an appropriate attorneys' fees award under 42 U.S.C. Sec. 1988. Liability regarding the one remaining claim had been affirmed; only damages were tried to a jury on remand. This time Lenard obtained a $267,000 damages judgment that was not appealed. Argento and Sansone, however, appealed the district court's award of $327,000 for attorneys' fees. We recently vacated the attorneys' fees award and remanded the case for further proceedings to determine a new amount. Lenard v. Argento, 808 F.2d 1242 (7th Cir.1987) ("Lenard II ").
 
 
 2
 While the appeal in Lenard II was pending, Lenard continued to pursue various actions to collect the judgments he had obtained. In Appeal No. 86-1960 Lenard sought to collect from the Village of Melrose Park (hereinafter "the Village") the damages and attorneys' fees judgment against Argento and Sansone. The district court granted Lenard relief on his claim in the nature of mandamus based on Ill.Rev.Stat. ch. 85, Sec. 9-102 (hereinafter "Sec. 9-102"). The court entered a judgment against the Village in the amount of both the damages and the fee award, but stayed execution of judgment as to the amount of attorneys' fees contested in Lenard II, which was still pending at the time. The court found it unnecessary to reach Lenard's other two claims in that action since they were only alternative means of obtaining the same relief.[2] In Appeal No. 86-2080 Lenard pursued a garnishment action against Hartford Accident and Indemnity Company (hereinafter "Hartford"), the Village's, and concomitantly the officers', insurer. The district court determined that the damages and the fee award obtained by Lenard were covered by the applicable insurance policy and entered a judgment in favor of Lenard and against Hartford for the amounts already awarded and all additional fees and costs obtained against the officers. In Appeal No. 86-3131 Lenard sought an award of costs and attorneys' fees incurred in obtaining the judgment against the Village.[3] The district court awarded $45,991 fees and $777 costs against the Village and in favor of Lenard. Lenard subsequently moved to amend that judgment to designate Argento and Sansone as the ones liable, but the district court denied that motion. In Appeal No. 86-3132 Lenard sought an award of fees and costs incurred in obtaining the judgment against Hartford.[4] Lenard was awarded $16,965 in attorneys' fees.
 
 
 3
 On appeal, the various appellants challenge the propriety of the judgments against them. There are no challenges to the calculations of the amounts awarded. We first consider the district court's jurisdiction in the cases before us and then separately consider the merits of each appeal.
 
 I. Jurisdiction
 
 4
 All the cases before us contain final judgments over which we have appellate jurisdiction. See Barrington Press, Inc. v. Morey, 816 F.2d 341, 342 (7th Cir.1987); Exchange National Bank of Chicago v. Daniels, 763 F.2d 286, 291-293 (7th Cir.1985). Both below and on appeal the Village argues that the district court did not have jurisdiction in the cases underlying the Village's two appeals. Hartford and the two police officers do not contest the district court's jurisdiction over the cases underlying their respective appeals, but, since jurisdictional issues may be raised sua sponte and the issues are similar, we also consider the district court's jurisdiction in those two cases.[5] We will initially focus on the district court's jurisdiction in Appeal No. 86-1960. Resolving the jurisdictional questions in the other three cases will require little additional elaboration.
 
 A. Appeal No. 86-1960
 1. Supplementary Jurisdiction
 
 5
 We agree with Lenard that the district court had jurisdiction over the cases. Federal Rule of Civil Procedure 69(a) provides in part:
 
 
 6
 Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought....
 
 
 7
 The judgments obtained by Lenard were in proceedings supplementary to and in aid of the initial civil rights judgment. But Rule 69(a) cannot be the end of our jurisdictional analysis since the Federal Rules neither create nor withdraw jurisdiction. Fed.R.Civ.P. 82; Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 370, 98 S.Ct. 2396, 2400, 57 L.Ed.2d 274 (1978); Blackburn Truck Lines, Inc. v. Francis, 723 F.2d 730, 732 (9th Cir.1984); Duchek v. Jacobi, 646 F.2d 415, 418 (9th Cir.1981). Rule 69(a), though, is a procedural mechanism for a court's exercise of its inherent jurisdiction to enforce its judgment in a supplemental proceeding.[6] Compare Blackburn, 723 F.2d at 732-733. Such jurisdictional authority has been long recognized.
 
 
 8
 [T]he rule is universal, that if the power is conferred to render the judgment or enter the decree, it also includes the power to issue proper process to enforce such judgment or decree.
 
 
 9
 ... [T]he jurisdiction of a court is not exhausted by the rendition of the judgment, but continues until that judgment shall be satisfied.
 
 
 10
 Riggs v. Johnson County, 73 U.S. (6 Wall.) 166, 187, 18 L.Ed. 768 (1867), quoted in McKee-Berger-Mansueto, Inc. v. Board of Education of Chicago, 691 F.2d 828, 831 (7th Cir.1982). See also Root v. Woolworth, 150 U.S. 401, 412, 14 S.Ct. 136, 139, 37 L.Ed. 1123 (1893); Berry v. McLemore, 795 F.2d 452, 455 (5th Cir.1986); Blackburn, 723 F.2d at 732.
 
 
 11
 The Village argues, however, that such jurisdiction does not extend to separate actions against nonparties to the original suit. It argues that a basis of jurisdiction separate from that over the original action is necessary when nonparties are involved.[7] The Village cites Root which contains language applying supplementary jurisdiction to equity suits involving "the same parties." Root, 150 U.S. at 411-412, 14 S.Ct. at 138-139. But Root only states that the rule is well settled as to the same parties; in that case it was unnecessary to consider whether the rule applied to a nonparty and the Court nowhere discusses that question. Therefore Root is not controlling precedent in the Village's favor. Moreover, in the almost 100 years since Root was decided, ancillary jurisdiction has been greatly expanded by the courts. See C.A. Wright & A. Miller, Federal Practice & Procedure Sec. 1444 at 219-220 (1971). The dissent, on the other hand, relies on H.C. Cook Co. v. Beecher, 217 U.S. 497, 30 S.Ct. 601, 54 L.Ed. 855 (1910). That case, decided over 75 years ago, is three paragraphs long containing a conclusion, but virtually no discussion. It has rarely been cited as precedent. Instead we rely on more recent and more complete explications of ancillary jurisdiction. Cf. Skevofilax v. Quigley, 810 F.2d 378, 385 n. 4 (3d Cir.1987) (en banc ), certiorari denied, --- U.S. ----, 107 S.Ct. 1956, 95 L.Ed.2d 528.
 
 
 12
 Two recent appellate court cases, neither of which are cited by the parties, discuss the jurisdictional issue now before us. The Third Circuit, sitting en banc, held that a Sec. 1983 plaintiff, who had obtained a judgment against police officers in their individual capacities, could also obtain a judgment against the township employing the officers based on an indemnity provision in their collective bargaining agreement. A five-judge majority held "that the district court has ancillary jurisdiction to adjudicate a garnishment action by a judgment creditor against a nonparty to the original lawsuit which may owe the judgment debtor an obligation to indemnify against the judgment, or any other form of property." Skevofilax, 810 F.2d at 385. Three of the judges on the majority additionally held that the township could have been added as a third-party defendant to a Rule 13(g) cross-claim by the police officers and therefore there was also jurisdiction over the township on that basis. Id. at 385-386. Judge Becker concurred. He determined that ordinary ancillary jurisdiction rules had to be applied and that under those rules there was jurisdiction. Id. at 388-390 (Becker, J., concurring). Three judges dissented. They agreed with the majority that a court has ancillary jurisdiction to execute on its judgments and that Rule 69(a) governed the exercise of such jurisdiction. Id. at 390 (Stapleton, J., dissenting). They concluded, however, that the particular state procedure incorporated by Rule 69(a) created a cause of action separate from the original Sec. 1983 suit and therefore a separate basis of jurisdiction was required. Id. at 392. That determination did not depend on a party/nonparty distinction except to the extent the applicable state procedure made such a differentiation.
 
 
 13
 In Berry v. McLemore, 795 F.2d 452 (5th Cir.1986), a police officer was found liable in his individual capacity under Sec. 1983. The town that employed the officer was not found liable. The plaintiff subsequently pursued a garnishment action against both the town based on the town's alleged promise to the officer to pay any judgment against him and the town's insurer based on an insurance contract. The Fifth Circuit held that jurisdiction in aid of a judgment is limited to actions that a court may take in the same action. Since it considered garnishment actions to be separate actions, it required that there be a separate basis of jurisdiction for the garnishment proceedings. Id. at 455. It found no separate basis of jurisdiction regarding the town, but found that the action against the insurer fell under the district court's diversity jurisdiction. Id. at 456.
 
 
 14
 We find no reason to draw a distinction, for purposes of subject matter jurisdiction,[8] between supplementary jurisdiction over a party and supplementary jurisdiction over a nonparty. Even the decision in Berry and the dissent in Skevofilax depended on a separate action distinction, not a party/nonparty distinction. The majority in Skevofilax and other cases have held that courts have supplementary jurisdiction to enforce their judgments even when nonparties are involved. Skevofilax, 810 F.2d at 385; Blackburn, 723 F.2d at 732-733; Chambers v. Blickle Ford Sales, Inc., 313 F.2d 252 (2d Cir.1963); Castro v. Beecher, 386 F.Supp. 1281, 1282 (D.Mass.1975); Green v. Benson, 271 F.Supp. 90, 93 (E.D.Pa.1967). See also Barrett v. International Underwriters, Inc., 346 F.2d 345 (7th Cir.1965); Chicago District Council of Carpenters Health & Welfare Fund v. Alan Scott Co., 597 F.2d 1103, 1104 (7th Cir.1979) (per curiam ); United States ex rel. Goldman v. Meredith, 596 F.2d 1353, 1357 (8th Cir.1979), certiorari denied, 444 U.S. 838, 100 S.Ct. 76, 62 L.Ed.2d 50.
 
 
 15
 We still must consider the separate action distinction. The Village characterizes the action against it as an indemnity action and argues that such claims "are separate and apart from tort claims and should not be heard in federal court." Kerr v. City of Chicago, 424 F.2d 1134, 1141-1142 (7th Cir.1970), certiorari denied, 400 U.S. 833, 91 S.Ct. 66, 27 L.Ed.2d 64. But compare Thomas v. Shelton, 740 F.2d 478, 486 (7th Cir.1984) (the most common third-party claim is a claim for indemnity). The applicable statute is Ill.Rev.Stat. ch. 85, Sec. 9-102. Although often referred to as an indemnity provision, see, e.g., Coleman v. Smith, 814 F.2d 1142, 1148 (7th Cir.1987), Sec. 9-102 actually makes a local public entity directly liable for the payment of certain tort judgments against its employees. Estate of Ahmed v. County of Cook, 146 Ill.App.3d 719, 721-722, 100 Ill.Dec. 368, 369-370, 497 N.E.2d 346, 347-348 (1986); Kolar v. County of Sangamon, 756 F.2d 564, 566 (7th Cir.1985). See also Arnolt v. City of Highland Park, 52 Ill.2d 27, 32-35, 282 N.E.2d 144, 147-148 (1972); McCottrell v. City of Chicago, 135 Ill.App.3d 517, 519-520, 90 Ill.Dec. 258, 259-260, 481 N.E.2d 1058, 1059-1060 (1985). In Kolar the claim under Sec. 9-102 was brought in a separate proceeding, 756 F.2d at 565, but in Coleman the Sec. 9-102 claim was brought in a post-trial motion as part of the original action,[9] 814 F.2d at 1148. Rule 69(a) incorporates state procedure, so that it is state procedure we look to in determining if a Sec. 9-102 claim should be considered a separate action. Skevofilax, 810 F.2d at 390 (Stapleton, J., dissenting). There is only one reported Illinois case in which Sec. 9-102 is cited. It appears from that case that a claim pursuant to Sec. 9-102 may be brought in the same action as the one against the government employee in his individual capacity. See Ahmed, 146 Ill.App.3d at 721-722, 100 Ill.Dec. at 369-370, 497 N.E.2d at 347-348. See also Arnolt, 52 Ill.2d at 35, 282 N.E.2d at 148; McCottrell, 135 Ill.App.3d at 519-520, 90 Ill.Dec. at 259-260, 481 N.E.2d at 1059-1060. Since the provisions of Sec. 9-102 do not require a separate action, it is unnecessary to determine if a separate action distinction should be made in determining the extent of the district court's supplementary jurisdiction. We therefore hold that, in Appeal No. 86-1960, the district court had jurisdiction to determine the Village's liability under Sec. 9-102.
 
 
 16
 Last, we wish to make clear that the decision we reach is a relatively narrow one. See Skevofilax, 810 F.2d at 388 (Becker, J., concurring). We do not decide the outer limit of a court's supplementary jurisdiction, nor do we extend supplementary jurisdiction beyond the scope of other types of ancillary jurisdiction. Both the Sec. 9-102 claim against the Village and the indemnity claim against the insurer (which is discussed below) are adequately related to the initial civil rights action to fall under ancillary jurisdiction. Skevofilax, 810 F.2d at 389-390 (Becker, J., concurring). See generally Owen Equipment, 437 U.S. at 372, 98 S.Ct. at 2401; Ambromovage v. United Mine Workers of America, 726 F.2d 972, 989-992 (3d Cir.1984). The claims arise from a common nucleus of operative facts. Judicial economy was well served since no additional fact-finding proceedings were necessary and the court was already familiar with the case through prior proceedings. This is not a case like Owen Equipment where the plaintiff had an independent claim against the third-party defendant and sought to avoid jurisdictional problems that would have existed if the plaintiff had brought suit directly against that party. See Owen Equipment, 437 U.S. at 376, 98 S.Ct. at 2404. The Village and Hartford are only liable to Lenard to the extent that Argento and Sansone are liable to Lenard; Lenard has no claims against the Village and Hartford independent of his claims against Argento and Sansone.
 
 
 17
 The dissent's principal reason for finding this case to be inappropriate for ancillary jurisdiction is that the ancillary claims require the resolution of state law issues. To the extent that Rule 69(a) incorporates state practice and procedure as the federal rule, though, it is actually federal law that is being enforced. Also, most of the state law being applied is settled, and it is only necessary to apply the law to the specific facts of this case. To the extent that new issues of state law must be decided, it is justified by the close link between the main and supplemental claims as well as judicial convenience and economy. Moreover, it is within the district court's discretion to determine when it is appropriate to exercise ancillary jurisdiction and we certainly do not find an abuse of discretion. The supplemental claims in this case satisfy ordinary ancillary jurisdiction rules.[10]
 
 
 18
 It is also unnecessary to decide if supplementary jurisdiction extends to "a fact-specific, disputed claim against a new, unrelated third party asserted after the end of the principal litigation." Skevofilax, 810 F.2d at 389 (Becker, J., concurring). An example of this would be "the post-judgment pursuit of a questionable gambling debt allegedly due the defendant from a non-diverse party who was not involved in the principal litigation." Id. at 388-389. The supplemental claims in the present case are not like the gambling debt example. The liability of the Village and the insurer are related to the same events that underlie the original civil rights action. Therefore we expressly limit today's decision to third-party, supplemental claims in which the third party's liability to the defendant is related to the original cause of action.
 
 2. Pendent Jurisdiction
 
 19
 Even if the district court did not have jurisdiction in Appeal No. 86-1960 based on its supplemental powers to enforce its judgment, there was pendent jurisdiction over the Sec. 9-102 claim.[11] Lenard had three claims against the Village: the Sec. 9-102 claim, a claim under an Illinois police indemnity statute, and a federal due process claim. Lenard argues that there is jurisdiction over the Sec. 9-102 claim pendent to the federal due process claim. The Village counters that the due process claim was insubstantial so that there can be no pendent jurisdiction. For there to be pendent jurisdiction over a state claim, the state claim and a federal claim must derive from a common nucleus of operative facts, and the federal claim must be sufficiently substantial to confer subject matter jurisdiction on the court. United Mine Workers of America v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). The parties do not dispute that the Sec. 9-102 claim and the due process claim derive from a common nucleus of operative facts.
 
 
 20
 It is true that when a district court dismisses all of a plaintiff's federal claims, it ordinarily should dismiss any pendent state claims as well. Maguire v. Marquette University, 814 F.2d 1213, 1218 (7th Cir.1987). The court is not required, though, to decide the merits of the federal claim before considering the pendent state claim. The court can provide relief on the state claim without ever deciding whether the federal claim was one on which relief could have been granted; it is only necessary that the federal claim has been substantial. Hagans v. Lavine, 415 U.S. 528, 536, 94 S.Ct. 1372, 1378, 39 L.Ed.2d 577 (1974). Moreover, it is ordinarily preferable to decide the pendent state claim first if by doing so the court can avoid a constitutional question. Id.; Schmidt v. Oakland Unified School District, 457 U.S. 594, 595, 102 S.Ct. 2612, 2612, 73 L.Ed.2d 245 (1982) (per curiam ); C.A. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure Sec. 3567.1 at 141-142 (2d ed. 1984). A claim can be substantial enough to support jurisdiction without actually stating a claim upon which relief can be granted. A claim is unsubstantial only if it is "so attenuated and unsubstantial as to be absolutely devoid of merit, wholly unsubstantial, obviously frivolous, plainly unsubstantial, or no longer open to discussion." Hagans, 415 U.S. at 536-537, 94 S.Ct. at 1378-1379 (citations omitted). "[I]f there is any foundation of plausibility to the claim federal jurisdiction exists." Wright, Miller, & Cooper, Sec. 3564 at 71.
 
 
 21
 The pertinent federal claim was that the Village denied Lenard's due process rights by refusing to pay him the amount the Village owed him pursuant to Sec. 9-102. In Evans v. City of Chicago, 689 F.2d 1286, 1296-1297 (7th Cir.1982), we held that such a right to payment is a property right.[12] We also held that Chicago's practice of delaying payments beyond the time permitted by Illinois statute constituted a deprivation of property without due process of law. Id. at 1297-1298. Lenard's claim is distinguishable in that he does not allege a practice of delay, but only a failure to pay the amount owed one person--himself. In light of Evans, however, we cannot say that such a claim is unsubstantial. The Village argues that Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), forecloses any federal claim Lenard might have. Parratt holds that there is no procedural due process violation if a state provides meaningful postdeprivation remedies. Id. at 539, 101 S.Ct. at 1915; Hudson v. Palmer, 468 U.S. 517, 531, 104 S.Ct. 3194, 3202, 82 L.Ed.2d 393 (1984). The Village points to Lenard's ability to raise his two pendent claims in state court as constituting an adequate postdeprivation remedy. However, Parratt applies only to deprivations caused by random and unauthorized acts, Hudson, 468 U.S. at 532-533, 104 S.Ct. at 3203; Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-436, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982); Parratt, 451 U.S. at 541, 101 S.Ct. at 1916, and Lenard has a substantial, if not meritorious, argument that claims like his, which involve intentional and authorized official acts of a municipality, are not foreclosed by Parratt. See Wolfenbarger v. Williams, 774 F.2d 358, 363-365 (10th Cir.1985), certiorari denied, 475 U.S. 1065, 106 S.Ct. 1376, 89 L.Ed.2d 602 (1986), and the cases cited therein. Without deciding whether Lenard ultimately could have prevailed on his due process claim, or even whether his allegations could have withstood a motion to dismiss, we hold that the due process claim was a substantial federal claim sufficient to confer subject matter jurisdiction upon the court. The Sec. 9-102 claim could appropriately be considered pursuant to the district court's pendent jurisdiction.
 
 
 22
 B. Appeal Nos. 86-2080, 86-3131, and 86-3132
 
 
 23
 We now consider whether the district court had jurisdiction over the other three cases that are part of this consolidated appeal. We first consider Appeal No. 86-2080, the indemnity action against the Village's insurer. No party contests the district court's jurisdiction, but as stated above, it is appropriate to consider the issue. We have already determined that the mere fact that a nonparty is involved does not preclude jurisdiction to enforce the court's judgment. We can again avoid deciding the question of whether a separate action distinction should be made in determining jurisdiction. In Appeal No. 86-2080 the indemnity proceeding against the insurer was brought as a post-judgment motion in the original action. In its brief, the Village quoted language from Kerr characterizing indemnity actions as being separate and apart from the underlying tort claim. The full quotation, however, is, "Claims for indemnity are separate and apart from tort claims and are not consolidated with the tort claim unless there is another contested issue such as the duty of the indemnitor to defend." 424 F.2d at 1141-1142 (emphasis added). Thus in this Circuit an insurer ordinarily cannot obtain a declaratory judgment as to its liability prior to the insured first being found liable, Cunningham Brothers, Inc. v. Bail, 407 F.2d 1165, 1169 (7th Cir.1969), certiorari denied, 395 U.S. 959, 89 S.Ct. 2100, 23 L.Ed.2d 745; National Union Fire Insurance Co. of Pittsburgh v. Continental Illinois Corp., 646 F.Supp. 746, 750 (N.D.Ill.1986), and an insurer cannot ordinarily be joined as a third-party defendant. Kerr, 424 F.2d at 1141-1142; but compare Thomas, 740 F.2d at 486. However, where there is an actual controversy, such as over an insurer's duty to defend, both declaratory relief, Sears, Roebuck and Co. v. Zurich Insurance Co., 422 F.2d 587, 589 (7th Cir.1970), and joining the insurer as a third party, Colton v. Swain, 527 F.2d 296, 302-303 (7th Cir.1975), are proper. See also Gianinni v. Bluthart, 132 Ill.App.2d 454, 460-461, 270 N.E.2d 480, 484-485 (1971); Loeber Motors, Inc. v. Sims, 34 Ill.App.3d 342, 351-352, 340 N.E.2d 132, 138-139 (1975); Wright & Miller, Secs. 1444, 1449. In the present case the liability of the defendants had already been established and Hartford denied liability under the insurance policy. Therefore a controversy existed that permitted Hartford to be joined in the action. Gianinni, 132 Ill.App.2d at 460-461, 270 N.E.2d at 484-485; Skevofilax, 810 F.2d at 386 n. 6; Wright & Miller, Sec. 1449 at 267. Thus the indemnity claim in this case need not be brought in a separate action and we perceive no other reason why the district court might possibly have lacked jurisdiction.
 
 
 24
 Even if this were to be considered a separate action, we doubt that the result would be different. The garnishment certainly is in aid of the court's jurisdiction and it is adequately related to the original action. Compare Skevofilax, 810 F.2d at 385; id. at 389-390 (Becker, J., concurring); Barrett, 346 F.2d 345; Chambers, 313 F.2d 252; Castro, 386 F.Supp. at 1282; Green, 271 F.Supp. at 93. Additionally, even if there were no supplementary jurisdiction in Appeal No. 86-2080, there may be diversity jurisdiction in that case. See Berry, 795 F.2d at 456.
 
 
 25
 Last, Appeals No. 86-3131 and No. 86-3132 are simply further proceedings of Nos. 86-1960 and 86-2080 respectively. Therefore, for the reasons already given, the district court had jurisdiction over those proceedings as regards the Village and Hartford. As regards Argento and Sansone, there was jurisdiction just as there was in the original civil rights action.
 
 
 26
 In sum, there is no jurisdictional problem with any of the cases now before us.
 
 II. The Merits
 A. Appeal No. 86-1960
 
 27
 The district court found that, pursuant to Ill.Rev.Stat. ch. 85, Sec. 9-102,[13] the Village was liable for the judgments against Sansone and Argento. The Village is a public entity to which that statute applies, but the Village argues that since Argento and Sansone are police officers, Illinois' police indemnity statute takes precedence and therefore is the only proper statute to apply. See Ill.Rev.Stat. ch. 24, Sec. 1-4-6.[14] Assuming Sec. 9-102 is applicable, the Village alternatively argues that it is not liable because Argento and Sansone were not acting within the scope of their employment.[15]
 
 
 28
 The Village's principal argument regarding which statute applies is that the police indemnity statute is the more particular one and therefore it controls over Sec. 9-102, which is more general and part of Illinois' Local Governmental and Governmental Employees Tort Immunity Act (hereinafter "Tort Immunity Act"). It is true that Sec. 9-102 is to be read in pari materia with Sec. 1-4-6. See Arnolt v. City of Highland Park, 52 Ill.2d 27, 34, 282 N.E.2d 144, 148 (1972); Gillespie v. City of Maroa, 104 Ill.App.3d 874, 878, 60 Ill.Dec. 646, 649, 433 N.E.2d 688, 691 (1982). We also agree that Illinois applies the rule of statutory construction that particular statutes control over general statutes. See Mills v. County of Winnebago, 104 Ill.App.2d 366, 372, 244 N.E.2d 65, 68 (1969). In Mills the Appellate Court of Illinois held that a sheriff indemnity statute, similar in relevant parts to Sec. 1-4-6 including excepting wilful misconduct from indemnification, controlled over a provision of the Tort Immunity Act which permits the imposition of liability on a county for wilful and wanton misconduct. See Ill.Rev.Stat. ch. 85, Sec. 2-202. That court held that the plaintiff could recover from a deputy sheriff for his wilful misconduct, but the county would not have to indemnify. Id. at 371-373, 244 N.E.2d at 68-69. Although different, but related, statutes were involved, this is essentially the same argument that the Village is now making. However, this holding in Mills was overruled sub silentio by Arnolt, 52 Ill.2d at 30-35, 282 N.E.2d at 146-148. See Hampton v. City of Chicago, 484 F.2d 602, 611 (7th Cir.1973), certiorari denied, 415 U.S. 917, 94 S.Ct. 1413, 39 L.Ed.2d 471 (1974); McCottrell v. City of Chicago, 135 Ill.App.3d 517, 520, 90 Ill.Dec. 250, 252, 481 N.E.2d 1058, 1060 (1985); Holda v. Kane County, 88 Ill.App.3d 522, 532-533, 43 Ill.Dec. 552, 560-561, 410 N.E.2d 552, 560-561 (1980).
 
 
 29
 In Arnolt the Illinois Supreme Court stated that Sec. 1-4-6 and Sec. 2-202 are seemingly incompatible,[16] but must be interpreted so as to give each meaning and effect. 52 Ill.2d at 31-32, 282 N.E.2d at 146. The court then held that Sec. 2-202 applies to direct liability of a municipality, but Sec. 1-4-6 only provides for indemnity; Sec. 1-4-6 "neither imposes liability upon, nor grants immunity to a municipality." Id. at 32, 282 N.E.2d at 147. The court made it clear that the Tort Immunity Act was the only one of the two statutes to consider in initially determining the liability of a municipality. The indemnity statute only comes into play if the police officer, or an assignee of the officer, seeks indemnity from a municipality after liability has been imposed on the officer. Id. at 33-34, 282 N.E.2d at 147-148. See also Andrews v. City of Chicago, 37 Ill.2d 309, 311, 226 N.E.2d 597, 598 (1967); Glover v. City of Chicago, 106 Ill.App.3d 1066, 1073-1074 & n. 1, 62 Ill.Dec. 597, 603 & n. 1, 436 N.E.2d 623, 629 & n. 1 (1982); Holda, 88 Ill.App.3d at 533, 43 Ill.Dec. at 560-561, 410 N.E.2d at 560-561; Krieger v. Village of Carpentersville, 8 Ill.App.3d 243, 247, 289 N.E.2d 481, 483 (1972). Thus in the present case Sec. 9-102 determines whether the Village is liable for payments to Lenard; Sec. 1-4-6 only determines whether the Village has to indemnify Argento and Sansone.[17]
 
 
 30
 Section 9-102 makes the Village liable for the payment of any tort judgments incurred in its own name, as well as any tort judgment entered against one of its employees as long as the employee was acting in the scope of his employment. See Ahmed, 146 Ill.App.3d at 721-722, 100 Ill.Dec. at 369-370, 497 N.E.2d at 347-348. The Village was not found liable in the initial civil rights action; therefore it is only liable if Argento and Sansone were acting within the scope of employment when they committed the "tort"[18] they were found liable for. The Village argues that intentional torts are not within the scope of employment. Illinois law, however, is clearly to the contrary. Coleman, 814 F.2d at 1149; McCottrell, 135 Ill.App.3d at 518-519, 90 Ill.Dec. at 259, 481 N.E.2d at 1059; Krieger, 8 Ill.App.3d at 247-248, 289 N.E.2d at 483-484; Cullom v. Yurkovich, 409 F.Supp. 557, 559 (N.D.Ill.1975). See also Hampton, 484 F.2d at 611; Arnolt, 52 Ill.2d at 31, 282 N.E.2d at 146; Glover, 106 Ill.App.3d at 1074, 62 Ill.Dec. at 604, 436 N.E.2d at 630. In Coleman, which interpreted scope of employment under Illinois' Sec. 9-102, we followed Hibma v. Odegaard, 769 F.2d 1147 (7th Cir.1985), an interpretation of a similar provision of Wisconsin law.
 
 
 31
 We stated in Hibma that "courts recognize that scope of employment includes 'those acts which are so "closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment." ' Cameron [v. City of Milwaukee, 102 Wis.2d 448], 307 N.W.2d at 168-69 [ (1981) (quoting W. Prosser, Law of Torts Sec. 70 at 460-61 (4th ed. 1980)) ]. The employee's actions in these instances further the objectives of the employment even absent good faith or an intention to benefit the employer." 769 F.2d at 1152. We then concluded: "While the deputies' actions were unquestionably designed to further their own wrongdoing, they also were designed to further the objectives of Sawyer County. They were performing their duties as deputy sheriffs but using quite improper methods of carrying out those duties." Id. at 1153.
 
 
 32
 ... We are of the view that those actions having an intimate bearing on the duties normally assigned to the office of employment, even though usurped or misused, must be considered as falling within the meaning of the term "scope of employment." ... If the relevant acts are shown to be a natural part of or incident to the service of employment, [Sec. 9-102] is satisfied.
 
 
 33
 Coleman, 814 F.2d at 1149. The acts committed by Argento and Sansone, which were pursuant to the arrest of Lenard while the officers were on duty, were within the scope of their employment. Compare Gillespie, 104 Ill.App.3d at 879, 60 Ill.Dec. at 650, 433 N.E.2d at 692. The district court properly determined that pursuant to Sec. 9-102 the Village is required to pay the judgments against Argento and Sansone.[19]
 
 B. Appeal No. 86-3131
 
 34
 In Appeal No. 86-3131 Lenard was awarded attorneys' fees and costs incurred in pursuing the mandamus action against the Village. A prevailing civil rights plaintiff is entitled to attorneys' fees incurred in collecting his civil rights judgment. Balark v. Curtin, 655 F.2d 798, 803 (7th Cir.1981). Argento and Sansone, the defendants liable in the initial civil rights action, are clearly liable for the expenses incurred in collecting from the Village and have reached a settlement to that effect.[20] The Village is liable for tort judgments or settlements involving the two officers. Ill.Rev.Stat. ch. 85, Sec. 9-102. As long as the officers did not settle by agreeing to pay potential liabilities outside their scope of employment, the Village must pay the settlement. Compare Gillespie, 104 Ill.App.3d at 879, 60 Ill.Dec. at 650, 433 N.E.2d at 692. We have already determined the officers' liability was for a tort committed in the scope of employment and the Village has made no argument that attorneys' fees and costs fall outside Sec. 9-102's definition of tort judgment or settlement. Therefore the Village must pay the fees and costs imposed on it in Appeal No. 86-3131. We reemphasize that this is a liability incurred under Sec. 9-102 in that a tort judgment and settlement imposed a liability on two of the Village's employees. Argento and Sansone are unsuccessful civil rights defendants who are required to pay the fees pursuant to Sec. 1988; Sec. 9-102 then requires that the Village pay that liability. Thus, contrary to the Village's argument, liability for the fees is not being imposed on the Village in its status as a prevailing defendant in the initial civil rights action nor simply because it is an innocent third party in a collection action; the obligation arises under Sec. 9-102 in the Village's status as an Illinois municipal employer, a "local public entity" within the scope of the statute.
 
 C. Appeal No. 86-2080
 
 35
 Appeal No. 86-2080 is a garnishment proceeding in which Lenard asserted Argento's and Sansone's indemnity rights under a contract of insurance between the Village and Hartford. The district court found that Hartford was liable under the policy[21] and entered a judgment for Lenard in the amount of the damages and fees he had won from Argento and Sansone. Hartford points to two clauses of the insurance policy that it claims exclude liability for the judgment against the police officers. It also argues that it was not obligated to pay the attorneys' fees as part of its obligation to pay costs. The parties do not dispute that Illinois law applies to this question.
 
 
 36
 The relevant provisions of the policy start with the provision defining "persons insured." The named insured is the Village, but persons insured also includes any employee of the Village "while acting within the scope of his duties as such." The policy provides coverage for damages liability resulting from an "occurrence." " 'Occurrence' means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Hartford also agreed to pay "all costs taxed against the insured in any suit defended by" Hartford.
 
 1. Damages
 
 37
 Hartford argues that the acts of Argento and Sansone were outside the scope of their duties. Hartford's argument assumes that scope of duties is synonymous with scope of employment. We have already determined that Argento and Sansone were acting within the scope of their employment. Therefore they are "persons insured" under the policy.
 
 
 38
 The next question is whether there was an "occurrence" covered by the policy. Hartford argues that Argento and Sansone either expected or intended the injuries that Lenard suffered and therefore there was no covered occurrence. The district court found that there were disputed facts on this issue as to Argento, but held the undisputed facts were that Sansone did not expect or intend Lenard's injury. Under the terms of the policy, and based on principles of joint and several liability, the district court found Hartford's liability for Sansone's "occurrence" was sufficient to make Hartford liable for all the damages won by Lenard. The principal question now before us is whether Sansone expected or intended Lenard's injuries. The jury verdict and our prior interpretation of that verdict control in the present case as regards any facts determined in those prior proceedings. See N.E. Finch Co. v. R.C. Mahon Co., 54 Ill.App.3d 573, 576-577, 12 Ill.Dec. 537, 540, 370 N.E.2d 160, 163 (1977); Illinois Law & Practice: Indemnity Sec. 42 at 489 (1977). Compare Bay State Insurance Co. v. Wilson, 96 Ill.2d 487, 492-494, 71 Ill.Dec. 726, 728-729, 451 N.E.2d 880, 882-883 (1983); J. Roth Builders, Inc. v. Aetna Life and Casualty Co., 151 Ill.App.3d 572, 577-578, 104 Ill.Dec. 920, 924, 503 N.E.2d 782, 786 (1987).
 
 
 39
 The occurrence clause now before us and other similar clauses have been the subject of numerous cases both in Illinois and other states. See, e.g., Mutual Service Casualty Insurance Co. v. McGehee, 711 P.2d 826 (Mont.1985) (collecting cases). In Illinois the clause has been interpreted as requiring a specific intent or expectation[22] that the bodily injury will occur. Thus there can be an intentional act causing an unexpected or unintended result, and there will be coverage under the occurrence clause. Bay State, 96 Ill.2d at 493, 71 Ill.Dec. at 728, 451 N.E.2d at 882; Farmers Automobile Insurance Association v. Medina, 29 Ill.App.3d 224, 225, 329 N.E.2d 430, 431 (1975); Affiliated FM Insurance Co. v. Beatrice Foods Co., 645 F.Supp. 298, 301 (N.D.Ill.1985). Whether an injury was expected is a subjective question, Bay State, supra; Roth Builders, 151 Ill.App.3d at 577, 104 Ill.Dec. at 924, 503 N.E.2d at 786; Shook v. Tinny, 122 Ill.App.3d 741, 745, 78 Ill.Dec. 58, 61, 461 N.E.2d 642, 645 (1984); Affiliated FM, supra, but a subjective expectation can be inferred from objective evidence that the injury was the natural and probable result of the act. Angelina Casualty Co. v. Pattonville-Bridgeton Terrace Fire Protection District, 706 S.W.2d 483, 484 (Mo.Ct.App.1986). Thus "[i]njuries which are of such a nature that they should have been reasonably anticipated by the insured" will be found to have been subjectively expected. Bay State, 96 Ill.2d at 494, 71 Ill.Dec. at 728-729, 451 N.E.2d at 882-883. See also Shook, 122 Ill.App.3d at 746, 78 Ill.Dec. at 61, 461 N.E.2d at 645.
 
 
 40
 Most of the cases cited by Hartford are battery cases. In such instances it is not necessary that the tortfeasor specifically intend or expect all the injuries that are the result of the blow to the injured person. The tortfeasor intends and expects at least some bodily injury and therefore necessarily expects any additional bodily injury that occurs. See Aetna Casualty & Surety Co. v. Freyer, 89 Ill.App.3d 617, 619, 44 Ill.Dec. 791, 793, 411 N.E.2d 1157, 1159 (1980); Shelter Insurance Companies v. Smith, 133 Ill.App.3d 635, 639, 88 Ill.Dec. 752, 754, 479 N.E.2d 365, 367 (1985); Angelina Casualty, 706 S.W.2d at 484-485. A conspiracy to deprive a person of the equal protection of the law is different. A member of the conspiracy may only have specifically intended or expected nonphysical injury, but under Sec. 1985 he can still be found liable for bodily injury caused by the conspiracy, including injuries immediately caused by other members of the conspiracy. Lenard I, 699 F.2d at 882-883 (quoting Hampton v. Hanrahan, 600 F.2d 600, 620-621 (7th Cir.1979), reversed in part on other grounds, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980)). A conspirator does not have to know specifically of, intend, or expect all the acts of the conspiracy nor all the injuries that will result; he will still be liable for injuries resulting from the conspiracy. Id.
 
 
 41
 In this regard a recent Illinois Appellate Court case is most instructive. In Illinois Farmers Insurance Co. v. Preston, 153 Ill.App.3d 644, 106 Ill.Dec. 552, 505 N.E.2d 1343 (1987), the insured was a defendant in a federal civil rights suit (Kufalk v. Hart, 610 F.Supp. 1178 (N.D.Ill.1985)). Kufalk alleged in the federal suit that he lost his job and suffered emotional distress resulting in bodily injury, due to false, misleading, and pretextual statements made by the insured as part of a conspiracy. Preston, 153 Ill.App.3d at 646, 106 Ill.Dec. at 553, 505 N.E.2d at 1344. The state suit was a declaratory judgment action brought by the insurer to establish that it had no duty to defend the insured since the claims against the insured were for intentional acts. The insurance policy provided liability coverage for accidental bodily injury. Like "occurrence" in Hartford's policy, "accident" was defined as "a sudden event; including continuous or repeated exposure to the same conditions, resulting in bodily injury neither expected nor intended by the insured." Id. at 647, 106 Ill.Dec. at 554, 505 N.E.2d at 1345. The court held that the federal claims fell under the contractual definition of accidents since a reasonable person could find that the injuries of Kufalk were not a foreseen natural and probable result of the insured's intentional conduct. Id. at 649, 106 Ill.Dec. at 554-556, 505 N.E.2d at 1345-1346. The court then determined whether a separate "intentional act" exclusion foreclosed any duty to defend. The court held that Kufalk's Sec. 1983 claim and conspiracy claim had to involve intentional acts to be cognizable. Id. at 649-650, 106 Ill.Dec. at 557, 505 N.E.2d at 1347. Since coverage was separately excluded for "bodily injury 'arising as a result of intentional acts of an insured,' " coverage was excluded under that clause even though the injury in the case fell under the definition of accident. Id. at 649-650, 106 Ill.Dec. at 556-557, 505 N.E.2d at 1346-1347. The "intentional act" exclusion was therefore distinguishable from the "accident" clause in that the exclusion excepted any bodily injury caused by an intentional act, while the accident clause only excepted bodily injuries specifically expected or intended to be caused by an intentional act. The lesson to be drawn from Preston is that civil rights claims for intentional violations can fall under the definition of occurrence as long as the injuries incurred were not specifically intended or expected. The policy in the present case does not have a separate "intentional act" exclusion.
 
 
 42
 As was the case with the insured in Preston, Sansone must have committed an intentional act; otherwise he could not have been found liable under Sec. 1985(3). See Quinones v. Szorc, 771 F.2d 289, 291 (7th Cir.1985). It does not follow, however, that he necessarily intended or expected the bodily injuries inflicted upon Lenard; such specific intent is not a necessary element of a Sec. 1985(3) claim. Id.; Lenard I, 699 F.2d at 882-883. Lenard I is the law of the case and, as the parties agree, we must follow it. Certain factual determinations follow necessarily from the jury verdict and our decision in Lenard I. Sansone intended to discriminate against Lenard and he agreed with Argento to do so. Their conspiracy caused Lenard to suffer bodily injuries. Those injuries occurred while Lenard was in police custody, but they were not the result of a beating. Sansone's contact with Lenard was primarily at the scene of an auto accident, not at the police station where Lenard was apparently injured. This indicates Sansone may not have been the immediate cause of Lenard's injury, but it does not show whether Sansone expected that Lenard would be physically injured while in police custody. It is necessarily true that Sansone expected Lenard to be treated discriminatorily, but physical injury is not necessarily an expected result of discrimination. To determine Sansone's specific intent precisely, we need to know the understanding between Argento and Sansone; but all we can know for sure is that they did not conspire to beat Lenard. See Lenard I, 699 F.2d at 883, 891.
 
 
 43
 To resolve the factual issue before us, it is essential to determine the appropriate standard of review. Lenard sought garnishment in what he termed a motion for a turnover order. That motion relied on the jury verdict and Lenard I for its facts. Hartford opposed the motion by moving to dismiss the garnishment proceeding or alternatively for summary judgment. Hartford provided verified copies of the insurance policies, a copy of the complaint, copies of jury instructions, and letters to the police officers regarding its duty to defend. Yet from the discussion above it is not at all clear that the undisputed facts show that Sansone specifically intended or expected the bodily injury to Lenard. Therefore Hartford was not entitled to summary judgment. See Fed.R.Civ.P. 56(c). The parties do not discuss what standard should be applied in reviewing the turnover motion. However, they rely entirely on the jury verdict and Lenard I for the facts to be considered. Hartford nowhere argues that it should have the opportunity to present additional evidence beyond what is already in the trial record. There is also no indication that Hartford agreed with the district court that the turnover motion was actually a motion for summary judgment; Hartford does not argue that disputed issues of material fact require reversal, nor does Lenard argue he has presented undisputed facts.
 
 
 44
 The district judge determined that the undisputed facts showed that Sansone did not specifically intend or expect Lenard's injuries. We question whether the facts should be considered undisputed, and we refuse to infer from Sansone's limited involvement that he did not specifically intend or expect the injuries that occurred. Further, under the substantive law of conspiracy a conspirator's intention or expectation is imputed to the co-conspirator because of the principle of vicarious liability. Thus, before Hartford is obligated to indemnify its insured, the case must be remanded to the trier of fact to determine specifically whether either of the co-conspirators intended or expected Lenard's injuries. If the trier of fact finds that either Argento or Sansone intended or expected Lenard's injuries, then Lenard's injury could not be considered as an "occurrence" and thus Hartford would not be obligated to indemnify its insureds.
 
 2. Attorneys' Fees
 
 45
 Still remaining is the question of whether attorneys' fees imposed pursuant to 42 U.S.C. Sec. 1988 are covered by the policy. Hartford argues such fees are neither damages nor costs and therefore are not covered under any provision of the policy. Lenard argues only that they are costs; that is all that needs to be considered.
 
 
 46
 The policy provides that Hartford will pay "all costs taxed against the insured in any suit defended by the company." The attorneys' fees were awarded pursuant to Sec. 1988. Section 1988 expressly designates that the fees are allowed "as part of costs." 42 U.S.C. Sec. 1988. Marek v. Chesny, 473 U.S. 1, 7-11, 105 S.Ct. 3012, 3016-3019, 87 L.Ed.2d 1 (1985); Hutto v. Finney, 437 U.S. 678, 697, 98 S.Ct. 2565, 2577, 57 L.Ed.2d 522 (1978); Szabo Food Service, Inc. v. Canteen Corp., 823 F.2d 1073, 1077 (7th Cir.1987). Since Sec. 1988 attorneys' fees are costs, they are covered by the policy. County of Suffolk v. Royal Globe Insurance Co., 1981 CCH Fire & Casualty Cases 1457, 1459 (E.D.N.Y.1981); Board of County Commissioners v. Guarantee Insurance Co., 90 F.R.D. 405, 407-408 (D.Colo.1981) (dictum ). Hartford argues that Illinois law controls and that it provides that indemnity contracts require the payment of attorneys' fees only if expressly stated or statutorily required. See Michaels v. Michaels, 767 F.2d 1185, 1205 (7th Cir.1985), certiorari denied, 474 U.S. 1057, 106 S.Ct. 797, 88 L.Ed.2d 774 (1986); Qazi v. Ismail, 50 Ill.App.3d 271, 272-273, 7 Ill.Dec. 434, 435-436, 364 N.E.2d 595, 596-597 (1977); Reese v. Chicago, Burlington & Quincy R.R., 5 Ill.App.3d 450, 457-458, 283 N.E.2d 517, 522 (1972), affirmed, 55 Ill.2d 356, 303 N.E.2d 382 (1973). The cases cited by Hartford are distinguishable. They all involve an indemnitee's attempt to recover his own attorneys' fees incurred in pursuing litigation. The attorneys' fees Hartford must pay are the fees of a third party that have been imposed on the insured as a cost. Moreover, unlike any of the cases cited by Hartford (but like Royal Globe and Guarantee Insurance ), the fees were imposed on the insured by statute. The insurance policy obligates Hartford to pay the attorneys' fee award as part of Hartford's obligation to pay costs. This decision is not contrary to Illinois law.
 
 D. Appeal No. 86-3132
 
 47
 In Appeal No. 86-3132 Lenard was awarded attorneys' fees and costs incurred in pursuing the garnishment proceeding involving Hartford. As a prevailing civil rights plaintiff, Lenard was entitled to these fees which were incurred in collecting his civil rights judgment. Balark, 655 F.2d at 803. Argento and Sansone are the appellants in this case. Their only argument is that a reversal in Appeal No. 86-2080 would require a reversal in No. 86-3132. Since we are reversing and remanding Appeal No. 86-2080, No. 86-3132 must also be reversed and remanded.
 
 
 48
 Additionally Lenard argues that this appeal is frivolous and therefore he is entitled to sanctions. See Fed.R.Civ.P. 38. We disagree. Since Appeal No. 86-2080 is being reversed, Argento and Sansone may obtain relief in No. 86-3132 by filing a Rule 60(b)(5) motion in the district court. See Mother Goose Nursery Schools, Inc. v. Sendak, 770 F.2d 668, 676 (7th Cir.1985), certiorari denied, 474 U.S. 1102, 106 S.Ct. 884, 88 L.Ed.2d 919 (1986). That method may be preferable, but the officers' decision to appeal No. 86-3132, and consolidate it with the appeal of a prior judgment on which No. 86-3132 relies, is also permitted. See, e.g., id.
 
 III. Conclusion
 
 49
 Appeal No. 86-1960 and Appeal No. 86-3131 are affirmed. Appeal No. 86-2080 and Appeal No. 86-3132 are reversed and remanded for further proceedings consistent with this opinion.[23] Costs are taxed against the particular appellant or appellants in Appeal No. 86-1960 and Appeal No. 86-3131. Fed.R.App.P. 39.
 
 
 50
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 51
 MANION, Circuit Judge, dissenting.
 
 
 52
 At oral argument the parties emphasized that, after years of litigation, they would like to have this matter put behind them. While I am sympathetic to their plight, I do not think we should accommodate the parties by expanding the jurisdiction of the federal courts. Despite the fact that all federal issues in this litigation have been conclusively resolved, the majority's expansive definition of pendent and supplementary jurisdiction allows the parties to use the federal courts to litigate solely state law issues. For the reasons I explain below, I believe that proceedings against the Village should be dismissed for lack of subject matter jurisdiction and that it is inappropriate to exercise jurisdiction over the proceedings against Hartford unless and until the parties establish diversity jurisdiction.
 
 
 53
 A. Appeal No. 86-1960: Pendent Jurisdiction Over Plaintiff's Claims Against The Village
 
 
 54
 At the outset, plaintiff's contention that his claims were properly before the district court under its pendent jurisdiction should be rejected because his complaint fails to present a substantial federal question. Plaintiff's "federal" claim, brought under 42 U.S.C. Sec. 1983, alleges that the Village's failure to pay the judgment against the officers constitutes a deprivation of property under the Fourteenth Amendment. The only authority plaintiff cites for this unique proposition is this circuit's decision in Evans v. City of Chicago, 689 F.2d 1286 (7th Cir.1982). Evans, however, is readily distinguishable. In Evans, the court held that the City of Chicago's practice of delaying the payment of judgments against it was a deprivation of property within the meaning of the Fourteenth Amendment. Id. at 1297. The court reached this holding because "[u]nder Illinois law, a judgment becomes a vested right of property once it is no longer subject to review or modification." Evans, 689 F.2d at 1296.
 
 
 55
 In the present matter, plaintiff did not have a judgment against the Village, much less one "no longer subject to review or modification." Expectations do not create property rights under the Fourteenth Amendment. Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); Shlay v. Montgomery, 802 F.2d 918, 921 (7th Cir.1986); Bigby v. City of Chicago, 766 F.2d 1053, 1056 (7th Cir.1985), cert. denied, 474 U.S. 1056, 106 S.Ct. 793, 88 L.Ed.2d 771 (1986). Nevertheless, the majority creates a substantial federal question for anyone who has nothing more than an expectation of a judgment against a municipality.
 
 
 56
 The majority states that there is no need to test the substance of plaintiff's federal claim because it is best to avoid constitutional issues. The constitutional issue has already been decided in Evans --under Illinois law a property interest exists in a judgment no longer subject to modification or review. This does not include an expected or hoped for judgment. We should not "tolerate a litigant's effort to impose upon [the federal courts] what is in effect only a state law case." United Mine Workers v. Gibbs, 383 U.S. 715, 727, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).
 
 
 57
 B. Appeal Nos. 86-1960 and 86-2080: Supplementary Jurisdiction Over Plaintiff's Claims Against The Village And Hartford
 
 
 58
 The majority also contends that the district court had supplementary jurisdiction to entertain the state law contract claims against Hartford and the state statutory claims against the Village. I respectfully disagree.
 
 
 59
 The Supreme Court long ago described a district court's supplementary jurisdiction to enforce its judgments as follows:
 
 
 60
 [I]f the power is conferred to render the judgment or enter the decree, it also includes the power to issue proper process to enforce such judgment or decree.
 
 
 61
 ... [T]he jurisdiction of a court is not exhausted by the rendition of the judgment, but continues until that judgment shall be satisfied....
 
 
 62
 Process subsequent to judgment is as essential to jurisdiction as process antecedent to judgment, else the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution.
 
 
 63
 Riggs v. Johnson County, 73 U.S. (6 Wall.) 166, 187, 18 L.Ed. 768 (1868) (footnote omitted).
 
 
 64
 The majority (as well as the Third Circuit in Skevofilax v. Quigley, 810 F.2d 378 (3d Cir.) (en banc), cert. denied, --- U.S. ----, 107 S.Ct. 1956, 95 L.Ed.2d 528 (1987)) extends this supplementary jurisdiction far beyond what is required to effectuate the judicial power of the federal courts. Plaintiff's state law claims are not brought to enforce the federal judgment received against the police officers. Rather, plaintiff is using the federal judgment to create new state law liabilities against strangers to the federal judgment.[1]
 
 
 65
 By allowing plaintiff to come into federal court to "satisfy" his federal judgment by creating a new state law judgment against a third party, the majority's holding runs directly contrary to the Supreme Court's holding in H.C. Cook Co. v. Beecher, 217 U.S. 497, 30 S.Ct. 601, 54 L.Ed. 855 (1910). In Beecher, the plaintiff, after receiving a federal judgment against a corporation in a patent infringement suit, attempted to impose individual liability upon the corporation's directors. The district court dismissed plaintiff's claims against the directors, holding that it lacked the subject matter jurisdiction to entertain "an attempt to make the defendants answerable for the judgment already obtained." 217 U.S. at 498, 30 S.Ct. at 602. The Supreme Court affirmed. Writing for the Court, Justice Holmes explained that "if the directors are under obligations by Connecticut law to pay a judgment against their corporation, that is not a matter that can be litigated between citizens of the same State in the [federal courts]." 217 U.S. at 499, 30 S.Ct. at 602.
 
 
 66
 Although Beecher was decided in 1910, the subsequent developments in the law of ancillary jurisdiction referred to by the majority have not weakened its precedential value. Like the doctrine of pendent jurisdiction, the doctrine of ancillary jurisdiction requires a balancing of interests between convenience to the litigants, judicial economy, and state autonomy. See American National Bank & Trust Co. of Chicago v. Bailey, 750 F.2d 577, 581 (7th Cir.1984), cert. denied, 471 U.S. 1100, 105 S.Ct. 2324, 85 L.Ed.2d 842 (1985); Federman v. Empire Fire and Marine Ins. Co., 597 F.2d 798, 809-10 (2d Cir.1979). Where state issues are necessarily intertwined with federal issues, avoiding piecemeal litigation justifies retaining jurisdiction over state law claims. When only state law claims remain to be litigated in federal court, however, it is generally inappropriate to retain jurisdiction over those claims. See Bailey, 750 F.2d at 581.
 
 
 67
 Analyzing plaintiff's claims under these principles of ancillary jurisdiction mandates that jurisdiction should not be exercised over the claims against the Village and Hartford. The exercise of federal jurisdiction over these claims intrudes into Illinois' substantial interest in developing and applying its own law. Among the state issues the majority interjects the federal courts into are: the liability under contract and state statute for attorney's fees awarded under 42 U.S.C. Sec. 1988; the definition of a police officer's scope of employment; the construction of insurance contracts; factual issues concerning whether Argento and Sansone were acting within the scope of employment; and factual issues concerning whether Argento and Sansone "expected" or "intended" Lenard's injuries.
 
 
 68
 Balanced against this intrusion into Illinois law are virtually no competing interests in judicial economy or convenience to the litigants. This is not a case where liability against the Village or Hartford was automatically established once liability was imposed upon the officers. Rather, liability against the Village and Hartford could only be imposed after litigation over many difficult legal issues, as well as many fact-bound determinations, such as whether the officers were acting within the scope of employment, whether they engaged in willful misconduct, and whether Lenard's injuries were expected or intended by the officers. Although the majority claims that jurisdiction over these claims is appropriate because they are related to the Sec. 1985(3) claims (conspiracy to deprive Lenard of the equal protection of the laws), this ignores the fact that when Lenard filed his state law claims against the Village and Hartford, the litigation over the Sec. 1985(3) claims had already been resolved. Had these claims been brought in state court there would have been little, if any, duplication of effort by either the parties or the state judiciary.[2]
 
 
 69
 The majority also claims that jurisdiction is appropriate because plaintiff's state claims against the Village could have been brought in the same "action" with the 42 U.S.C. Sec. 1985(3) claim. Assuming the majority has correctly stated Illinois law, whether the claims could be brought in the same "action" in Illinois courts is not dispositive of the federal jurisdictional issue. As noted above, before a federal court may intrude into issues of state law there must be a justification for doing so; considerations of convenience and economy outweigh federal intrusion into matters of purely local concern. By reducing the jurisdictional question in this matter to simply whether the claims could be brought in the same action under Illinois law, the majority disregards the doctrinal basis for exercising ancillary jurisdiction.
 
 
 70
 Moreover, by citing Berry v. McLemore, 795 F.2d 452 (5th Cir.1986) (Berry II ) as approving its "same action" standard, the majority misconstrues the Fifth Circuit's position on this issue. In Berry II, the Fifth Circuit held that a district court did not have supplementary jurisdiction to hear state law garnishment claims brought against a municipality and an insurance company by a plaintiff who had received a federal civil rights judgment against the municipality's chief of police. In holding that there was no supplementary jurisdiction, Berry II did rely on Fifth Circuit precedent holding that garnishment claims were construed as separate actions from the underlying debt. That precedent, Butler v. Polk, 592 F.2d 1293, 1296 n. 7 (5th Cir.1979) (holding garnishment claims are separate from judgment debt for removal purposes under 28 U.S.C. Sec. 1441(c)), however, made clear that, while state law is relevant, the ultimate characterization of an action in federal court is a matter of federal law. In determining that the garnishment claims should be considered separate claims, Butler relied primarily on the fact that the garnishment claims were new claims against new parties litigating the existence of a new liability and that the claims were couched in terms of individual, not parallel or shared, liability. Id. at 1295-96.
 
 
 71
 More important, the jurisdictional holding in Berry II was premised on a much broader ground than simply that Butler prevented the claims from being maintained in the same action. In relevant part, the court stated:
 
 
 72
 Moreover, the basis of the garnishment proceedings and the basis of the claim against [the Chief of Police] are different. In [the original proceeding], Berry's claim arose out of an alleged violation of his constitutional rights; in the instant garnishment proceedings, Berry's claims allegedly arise out of contract, that is the alleged oral agreement between the Town and [the Chief of Police] and the written policy of insurance between [the insurance company] and the Town, of which [the Chief of Police] is claimed to be an insured. In other words, the alleged obligations of the Town and [the insurance company] are completely independent of the primary judgment against [the Chief of Police]. We can find no case where a court held that it had ancillary jurisdiction to consider claims in a new and independent action merely because the second action sought to satisfy or give additional meaning to an earlier judgment.
 
 
 73
 795 F.2d at 455 (emphasis in original). In short, Berry II found the exercise of jurisdiction to be inappropriate under circumstances that, for all practical purposes, are indistinguishable from the present case.
 
 
 74
 Furthermore, the majority does not even look to whether the claims against Hartford could be maintained in the same action as the underlying Sec. 1985(3) claims. Rather, the majority sees no problem with exercising jurisdiction because a live "controversy" exists over these claims. The existence of a "controversy", however, goes only to the issue of standing, not to the more specific issue of whether the exercise of supplementary jurisdiction is appropriate.
 
 
 75
 In sum, the factual and legal issues raised under state law in this unique case should have been resolved in state court. Plaintiff's claim sought to obtain new judgments against new parties based on new state law theories of liability--without any showing that the resolution of these matters in federal court would better serve the interests of the parties or the judicial system. The resolution of these claims in federal court is unwarranted.
 
 
 76
 C. Appeal No. 86-2080: Diversity Jurisdiction For Claims Against Hartford
 
 
 77
 Although I believe the district court did not have supplementary jurisdiction to entertain the claim against Hartford, there appears to be a question as to whether diversity jurisdiction may exist over this claim. The parties, however, have not established diversity of citizenship. Before dismissing the appeal for lack of subject matter jurisdiction, the parties could be given an opportunity to develop the record on this alternative jurisdictional basis. See Buethe v. Britt Airlines, Inc., 749 F.2d 1235, 1239 (7th Cir.1984); Hoefferle Truck Sales, Inc. v. Divco-Wayne Corp., 523 F.2d 543, 549 (7th Cir.1975). Until diversity jurisdiction is established, however, it is inappropriate for the court to exercise jurisdiction over this appeal.
 
 
 78
 D. Appeal Nos. 86-3131 and 3132: Payment Of Plaintiff's Attorney's Fees Under Sec. 9-102 And The Insurance Policy
 
 
 79
 Appeal Nos. 86-3131 and 86-3132 are, as the majority notes, further proceedings of Appeal Nos. 86-1960 (Village's appeal) and 86-2080 (Hartford's appeal) respectively. Accordingly, I believe Appeal No. 86-3131 should be dismissed for lack of subject matter jurisdiction and that it is inappropriate to exercise jurisdiction over Appeal No. 86-3132 unless and until diversity jurisdiction is established.
 
 
 
 [1]
 There were also claims against other defendants but those defendants are not relevant to the present suit
 
 
 [2]
 The other two claims were a creditor's bill based on the officers' assignments to Lenard of their indemnity rights against the Village under Ill.Rev.Stat. ch. 24, Sec. 1-4-6 (hereinafter "Sec. 1-4-6") and a Sec. 1983 federal due process claim against the Village for failing to make payments allegedly required by Illinois law
 
 
 [3]
 These are the fees and costs incurred in the action underlying the appeal in Appeal No. 86-1960
 
 
 [4]
 These are the attorneys' fees incurred in the action underlying the appeal in Appeal No. 86-2080
 
 
 [5]
 Although there are four different cases on appeal, there are only two cases below. This is due to the fact that the merits of cases and fee awards in cases are separately appealable. See Daniels, 763 F.2d at 291-293. For convenience we will refer to four different cases in both this Court and the district court. The cases involving the insurer are two additional stages of the original civil rights case and thus have the same docket number in the district court as the original civil rights action. The two cases involving the Village were designated with a single district court docket number, but one different than the original civil rights case
 
 
 [6]
 We will refer to jurisdiction in aid of or to enforce a judgment as supplementary jurisdiction. Such jurisdiction is a type of ancillary jurisdiction
 
 
 [7]
 We agree with the Village that, since not found liable in the civil rights action, it should be considered a nonparty. See Skevofilax v. Quigley, 810 F.2d 378, 384 (3rd Cir.1987) (en banc ), certiorari denied, --- U.S. ----, 107 S.Ct. 1956, 95 L.Ed.2d 528; Berry, 795 F.2d at 455 n. 2
 
 
 [8]
 There is no question of personal jurisdiction involved in the present case
 
 
 [9]
 Coleman was like Skevofilax in that the municipal entity's only liability was for a claim distinct from the claims won against the individual defendants who were employees of the municipality. Thus, like the township in Skevofilax, the village in Coleman was a nonparty in relation to the judgments sought to be collected from it. The fact that a Sec. 9-102 claim was permitted in Coleman would be controlling in the present case except that the jurisdictional issue was not discussed. See Glidden v. Chromalloy American Corp., 808 F.2d 621, 625 (7th Cir.1986). The use of Sec. 9-102 to collect from the county defendant in Kolar can be distinguished in that the defendant county sheriff in that case was liable in his official capacity, thus making the county liable as well. 756 F.2d at 567-568. But this may not be a distinguishing fact since in Kolar there was no reliance on the fact of official liability in holding that Sec. 9-102 could be applied to require the defendant county to pay the judgment
 In its petition for rehearing, the Village concedes that Skevofilax should be followed and that Lenard would have had jurisdiction to bring an indemnity action against the Village. Contrary to its earlier position, the Village now agrees with the Court that the Village can be directly liable to Lenard under Sec. 9-102. The Village argues, though that the state procedure to apply through Tule 69(a) is Ill. Rev. Stat. ch. 110, Sec. 2-1402(b)(3), and ch. 110A, Sec. 277(a), which govern supplemental proceedings in state court. The latter provides that "the proceeding may be against the judgment debtor or any third party the judgment creditor believes has property of or is indebted to the judgment debtor." The Village argues that it would not be liable to Argento or Sansone pursuant to Sec. 9-102 and therefore the Village is not a third party indebted to the judgment debtor. Lenard, though, points to Sec. 2-1402(g) and other statutory and common law procedures. The Court does not decide if Argento and Sansone would have a claim against the Village under Sec. 9-102, nor if their lack of such a claim would preclude a supplemental proceeding if Lenard was in state court. The Court does not rely on the statutes cited by the Village because we hold that under state law the claim against the Village pursuant to Sec. 9-102 could have been brought together with the claim against Argento and Sansone and therefore is not to be considered a separate action for purposes of determining jurisdiction, i.e., it is not a separate action that might require a separate basis of jurisdiction. Whether Lenard followed incorrect procedure in pursuing this claim is a non-jurisdictional issue that was not raised below nor on appeal and need not be considered. Compare O'Connell v. Pharmace, Inc., 143 Ill.App.3d 1061, 1067-1069, 98 Ill.Dec. 154, 158-160, 493 N.E.2d 1175, 1179-1181 (4th Dist. 1986), certiorari denied, --- U.S. ----, 107 S.Ct. 1303, 94 L.Ed.2d 158 (1987).
 
 
 [10]
 The dissent cites American National Bank & Trust Co. v. Bailey, 750 F.2d 577, 581 (7th Cir.1984), certiorari denied, 471 U.S. 1100, 105 S.Ct. 2324, 85 L.Ed.2d 842, for the proposition that ancillary jurisdiction generally should not be retained when only state law issues remain. But Bailey refers only to circumstances where the main claim is dismissed before trial. In the present case, the main claim went to trial and Lenard succeeded on the merits. If the dissent's proposed rule was to be applied, there would never be a Rule 69(a) motion since, by definition, such a motion must come after the original judgment and state practice and procedure apply
 
 
 [11]
 We leave undiscussed whether Argento's and Sansone's possibility of cross-claiming against the Village supports another theory for finding jurisdiction over the Sec. 9-102 claim. Compare Skevofilax, 810 F.2d at 385-386; id. at 393-396 (Stapleton, J., dissenting)
 
 
 [12]
 The dissent distinguishes Evans on the ground that Lenard did not have a judgment against the Village. But Lenard had a judgment against Argento and Sansone which was not appealed and therefore was a vested property right. As we determine below, under Sec. 9-102 the Village was also obligated to pay that judgment. It is not frivolous to argue that in light of Evans, the Village committed a due process violation by depriving Lenard of his property right in the judgment against the officers when the Village failed to pay timely the judgment which it was also liable to pay. We decide only that such an argument is nonfrivolous; we need not decide if it would ultimately be successful
 
 
 [13]
 A local public entity is empowered and directed to pay any tort judgment or settlement for which it or an employee while acting within the scope of his employment is liable in the manner provided in this Article. A local public entity may make payments to settle or compromise a claim or action which has been or might be filed or instituted against it when the governing body or person vested by law or ordinance with authority to make over-all policy decisions for such entity considers it advisable to enter into such a settlement or compromise
 Ill.Rev.Stat. ch. 85, Sec. 9-102 (1978) (amendments effective November 25, 1986 are not included in this quotation).
 
 
 [14]
 In case any injury to the person or property of another is caused by a member of the police department of a municipality having a population of less than 500,000, while the member is engaged in the performance of his duties as a policeman, and without the contributory negligence of the injured person or the owner of the injured property, or the agent or servant of the injured person or owner, the municipality in whose behalf the member of the municipal police department is performing his duties as policeman shall indemnify the policeman for any judgment recovered against him as the result of such injury, except where the injury results from the wilful misconduct of the policeman, to the extent of not to exceed $50,000 including costs of suit
 Ill.Rev.Stat. ch. 24, Sec. 1-4-6 (1975) (amendments effective September 18, 1985 are not included in this quotation). Section 1-4-5 of this chapter has the same operative language except that Sec. 1-4-5 applies to municipalities with a population of 500,000 or more. Cases involving Sec. 1-4-5 and Sec. 1-4-6 are cited interchangeably. See Krieger v. Village of Carpentersville, 8 Ill.App.3d 243, 247 n. 2, 289 N.E.2d 481, 483 n. 2 (1972); Glover v. City of Chicago, 106 Ill.App.3d 1066, 1071, 62 Ill.Dec. 597, 601, 436 N.E.2d 623, 627 (1982).
 
 
 [15]
 "Tort judgment" as used in Sec. 9-102 is not clearly defined. See Ill.Rev.Stat. ch. 85, Sec. 9-101(d). Subsequent to the district court's final judgment in this case, Sec. 9-102 was amended to apply to "any tort judgment or settlement for compensatory damages." Ill.Rev.Stat. ch. 85, Sec. 9-102 (1986) (italicized language added effective November 25, 1986). In any event, since the Village makes no argument that tort judgment does not include attorneys' fees and costs as well as damages, this opinion makes no distinction between damages, fees, and costs. See Kolar, 756 F.2d at 568 n. 4
 
 
 [16]
 Section 2-202 waives municipal immunity for wilful and wanton acts taken while executing or enforcing any law. Such immunity is not waived for negligent acts in executing or enforcing laws. Section 1-4-6 excludes from indemnification police liability for wilful misconduct
 
 
 [17]
 The indemnity rights of Argento and Sansone have been assigned to Lenard. Lenard, however, stopped pursuing these rights after liability was imposed under Sec. 9-102. Like the district court, we do not determine if indemnity is appropriate under Sec. 1-4-6
 
 
 [18]
 It is settled that a Sec. 1983 judgment is a tort judgment under Sec. 9-102. Kolar, 756 F.2d at 566-567. The Village does not argue that Sec. 1985 claims do not fall under Sec. 9-102, so that we can assume they do
 
 
 [19]
 The further arguments of the Village that confuse official liability and scope of employment are without merit. See Coleman, 814 F.2d at 1148 n. 2. Additionally, the decision in this case is not contrary to Monell v. Department of Social Services, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978), which limits municipal liability in a Sec. 1983 action to official policy or custom. This limitation also applies to Sec. 1985 actions. Owens v. Haas, 601 F.2d 1242, 1247 (2d Cir.1979). It is not Sec. 1985 that makes the Village liable for payments, but Illinois' decision to require its municipalities to pay certain tort judgments of municipal employees. See Williams v. Horvath, 16 Cal.3d 834, 843-848, 548 P.2d 1125, 1131-1134, 129 Cal.Rptr. 453, 459-462 (1976) (en banc ). Compare Kolar, 756 F.2d at 567 (Sec. 9-102 waives municipality's federal immunity from punitive damages). If the legislature of Illinois does not believe that it is best for municipalities to, in essence, protect its employees from liabilities for certain Sec. 1983 and Sec. 1985 judgments, it is free to amend the relevant statutes. But absent such a change, it is the law and policy of Illinois to require municipalities to pay the tort liabilities of municipal employees if the liability is for an act in the scope of employment
 
 
 [20]
 Argento and Sansone conceded that if Appeal No. 86-1960 is affirmed they are liable for the award in No. 86-3131. They had otherwise argued that if Appeal No. 86-1960 was reversed, the judgment against them in No. 86-3131 should also be reversed. This is a strange argument since Appeal No. 86-3131 only imposed the liability on the Village (Argento and Sansone were designated as plaintiffs in No. 86-1960) and the police officers are not parties to the appeal in No. 86-3131. Instead the officers assigned to Lenard any rights they had against the Village. This assignment was a concession of liability for any successful collection attempts. In other words, Lenard and the officers settled their dispute as to liability for collecting on the judgment, but left open the specific amount of the liability
 
 
 [21]
 There are actually two policies, a general policy and an umbrella policy. For the purpose of deciding the case now before us, it is unnecessary for us to distinguish the two; the relevant provisions are found in both policies
 
 
 [22]
 The terms "expected" or "intended," as used in the clause, are not synonymous. Since expectation is easier to prove, that is the one we will primarily consider. See Bay State, 96 Ill.2d at 494, 71 Ill.Dec. at 728, 451 N.E.2d at 882
 
 
 [23]
 In Lenard II we remanded the attorneys' fees award for the civil rights action to the district court for a determination of a new amount. No party argues that Lenard II requires a remand in any of the present cases, so that we do not consider that possibility. In any event, any potential relief can be obtained by filing a Rule 60(b)(5) motion in the district court. See Mother Goose, 770 F.2d at 676
 
 
 [1]
 As the majority correctly notes, because the Village was found not liable in the civil rights action, it should be considered a non-party to the underlying litigation. See Berry v. McLemore, 795 F.2d 452, 455 n. 2. (5th Cir.1986)
 
 
 [2]
 The majority misconstrues the dissent when it states that the principal reason for the dissent is that "the ancillary claims require the resolution of state law issues." As noted above, the principal reason for declining jurisdiction is that a federal district court does not have supplementary jurisdiction to hear new claims against new parties under new theories of liability. This much is made clear by H.C. Cook Co. v. Beecher, 217 U.S. 497, 30 S.Ct. 601, 54 L.Ed. 855 (1910). Beecher cannot be avoided simply by resorting to "more recent and more complete explications of ancillary jurisdiction" by the Third Circuit. Ancillary jurisdiction is appropriate only when interests of judicial economy and convenience outweigh the intrusion into state law. The mere presence of state law issues does not render ancillary jurisdiction inappropriate, but the complete lack of the competing interests of judicial economy and convenience to the litigants does render it inappropriate
 The majority also misreads the dissent when it claims that under the dissent's view, a Rule 69(a) motion would never be appropriate. The dissent does not take issue with the use of Rule 69 by a victorious plaintiff against a judgment debtor. The power to render the judgment also includes the power to enforce it. See Riggs v. Johnson County, 73 U.S. (6 Wall) 166, 187, 18 L.Ed. 768 (1868). It is an entirely different matter, however, to extend this supplementary jurisdiction to allow a plaintiff to bring new claims against new parties. See H.C. Cook Co. v. Beecher, 217 U.S. at 499, 30 S.Ct. at 602.