902 F.2d 1569
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
MANTEY, MON AMI, LONZ WINERIES, INC., et al., Plaintiffs-Appellees,
v.
Nathan BUCKANTZ, et al. Defendants-Appellants.
 Nos. 89-3452, 89-3699.
 United States Court of Appeals, Sixth Circuit.
 May 24, 1990.
 
 Before BOYCE F. MARTIN, Jr. and BOGGS, Circuit Judges, and CHARLES W. JOINER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 This is a consolidated appeal of two lawsuits arising out of a contract to purchase restaurant property on Catawba Island, Ohio. The district court denied specific performance of the contract, and allowed the owner to evict the tenant. We affirm.
 
 
 2
 * A
 
 
 3
 In the first lawsuit, Nathan Buckantz and M.A. Restaurant, Inc. (collectively, "Buckantz") sued Mantey, Mon Ami, Lonz Wineries, Inc. (MMAL, Inc.); Robert Gottesman; and Paramount Distillers, Inc. (collectively, "Gottesman") for specific performance of a contract to purchase the Mon Ami restaurant; the complaint alleged violations of federal statutes, including the Sherman Act, the Clayton Act, and the Federal Alcohol Administration Act, and included several pendent state law claims. Gottesman counterclaimed for rent owed to Gottesman on account of Buckantz's occupancy of the Mon Ami property beyond the term of his lease.[1] Buckantz had been operating the Mon Ami restaurant since 1980.
 
 
 4
 The parties agreed, and the district court so ordered, that discovery would proceed only on the specific performance claim (Count II) and on the counterclaim for rent. On November 8, 1988, the district court rendered a judgment for Gottesman after a two-day bench trial. It held that Buckantz had no ownership interest in the property, that Buckantz was instead a holdover tenant, and that therefore Gottesman was entitled to back rent. The district court did not enter this judgment immediately.
 
 
 5
 On March 15, 1989, Gottesman filed in federal court the second lawsuit involved in this appeal. Gottesman sought to regain possession of the property in accordance with the judgment in the Buckantz Case. The action was essentially an eviction action pursuant to Ohio Rev.Code Sec. 1923.[2] The Eviction Case was consolidated with the Buckantz Case, and both parties filed motions for summary judgment. The court granted Gottesman's motion for summary judgment and ordered Buckantz to vacate the property within fifteen days of the entry of judgment. Upon Buckantz's motion, the district court stayed execution of the judgment in the Eviction Case pending our disposition of this appeal. On June 27, 1989, the district court entered final judgment in the Buckantz Case.
 
 B
 
 6
 In 1979, Robert Gottesman and Nathan Buckantz began discussing the possible acquisition of various properties owned by Norman E. Mantey, including the Mon Ami restaurant and two wineries. Gottesman wanted to operate the wineries but not the restaurant. He asked Buckantz--a restaurateur since 1947--to join him in the venture and run the restaurant. Gottesman agreed to purchase all of the properties since Buckantz did not have any funds to contribute.
 
 
 7
 Buckantz contacted Mantey and negotiated a purchase price in early 1980. On February 27, 1980, Mantey, Gottesman, and Buckantz executed an Asset Purchase Agreement. The total purchase price was $714,000, $364,000 of which was evidenced by a note from Gottesman to Mantey; Gottesman paid the remainder in cash. Gottesman and Buckantz cosigned the agreement as joint purchasers.
 
 
 8
 On February 29, 1980, Gottesman and Buckantz executed a lease agreement. The agreement provided for Gottesman to lease the restaurant to Buckantz and reserved for Buckantz an option to purchase the premises for $313,850.
 
 
 9
 Pursuant to the February 29 agreement, Gottesman and Buckantz executed a lease on March 1. Buckantz would lease the restaurant from Gottesman for one year at a rate of $3,033.33 per month. Paragraph 33 of the lease provided that Buckantz would purchase the restaurant from Gottesman for $321,581 before the end of the lease. Paragraph 16 of the lease provided for Buckantz to be given 30 days, after receiving notice of any default, to cure the default.
 
 
 10
 On July 31, 1980, Gottesman, Buckantz, and Mantey executed an amendment to the Asset Purchase Agreement in order to delete Buckantz's name and to clarify that "Nate Buckantz did not purchase any of the aforesaid assets from ... Mantey" and "to reflect that fact that Buckantz had and has no rights, interest or obligation [under the Asset Purchase Agreement]." Gottesman's lawyer stated in a July 24, 1980 letter to Gottesman that "the reason for the amendment is to satisfy the Bureau [of Alcohol, Tobacco & Firearms] that Nate Buckantz has no present interest nor had an interest in the wineries bought from Mantey. The Bureau is hung up because Buckantz's name appears in the Purchase Agreement."
 
 
 11
 By early 1981, Buckantz was unable to obtain the financing necessary to purchase the restaurant. Gottesman and Buckantz started to negotiate an extension of the lease past March 1, 1981. Gottesman negotiated with Mantey a one-year extension for a portion of the principal amount due on his note. To cover the portion of the note that Mantey would not extend, Gottesman secured a $200,000 bank loan. On March 10, 1981, Gottesman and Buckantz extended the lease until February 28, 1982. Buckantz continued to operate the restaurant.
 
 
 12
 By February 1982, Buckantz still had not been able to arrange financing for the purchase of the restaurant. Gottesman requested that Mantey grant another one-year extension on the note. Mantey agreed to extend $100,000 of the $164,000 principal amount remaining, and Gottesman paid Mantey the other $64,000. On March 5, 1982, Gottesman and Buckantz agreed to extend the lease until February 28, 1983.
 
 
 13
 By February 28, 1983, Buckantz was still unable to assemble the funds needed to purchase the restaurant from Gottesman. Buckantz was in arrears on his rent payments to Gottesman. Gottesman again asked Mantey to extend the due date of the $100,000 balance on the note, and Mantey agreed to extend until May 1, 1983. Gottesman notified Buckantz that he expected Buckantz "to come up with the cash to handle this" by May 1. On April 4, 1983, Gottesman's attorney sent Buckantz's attorney a letter stating:
 
 
 14
 If your client does not purchase the property by [May 1, 1983], then our client will permit your client to remain at the premises on a lease basis only....
 
 
 15
 Buckantz argues that these two statements did not conform with the notice requirements of paragraph 16 of the lease. He claims that he received an oral commitment from a bank before May 1, 1983 to lend him the funds needed to buy the restaurant. According to Buckantz, he was ready to proceed by May 1, but Gottesman was reluctant to consummate the deal until he devised an exclusive wine arrangement for the restaurant. Gottesman argues that Buckantz makes this claim only to cloak the fact that Buckantz's failure to perform by May 1 was the true reason the deal collapsed. Gottesman asserts that the evidence flatly contradicts Buckantz's claim that he had the wherewithal to tender the purchase price by May 1.[3] We agree, consistent with the district court's findings, that Buckantz was not able to perform before the expiration of the contract and that his option to purchase therefore lapsed.
 
 II
 
 16
 In his attempt to persuade us that he is entitled to specific performance, Buckantz argues that he was in substance the mortgagor of the restaurant property. He claims that he had merely pledged the property to Gottesman, who was funding him, and that Gottesman held legal title to the property only as security for a loan to Buckantz.
 
 
 17
 Buckantz also contends that the evidence demonstrated, contrary to the court's findings, that time was not of the essence in this deal, and that, in any case, he was able and willing to perform by May 1, 1983. The evidence showed that Buckantz had obtained firm commitments for financing from two banks by the end of July 1983, after having obtained oral commitments by May 1. Buckantz claims that July came within a reasonable time after the contract terminated, and that Buckantz was ready to buy the restaurant at that time.
 
 
 18
 We agree with the district court that the transaction was not a mortgage. No mortgage could exist because no debt was owed by Buckantz to Gottesman and no transfer of the property was made to Buckantz. These essential elements of a legal mortgage were clearly absent. There was no transfer of ownership. The only debt owed was by Gottesman to Mantey. Buckantz had no liability on the promissory note executed by Gottesman in favor of Mantey. Buckantz also had no obligation to Gottesman beyond the lease; Buckantz admitted to the district court that "if he had been unable to obtain financing at the end of the lease term and decided not to extend the lease, but rather to conduct business elsewhere, he would have owed Gottesman nothing." What Buckantz paid to Gottesman constituted rent payments under the lease. The district court's construction of the transaction comports with the intentions of the parties.
 
 
 19
 Furthermore, no reasonable interpretation of the transaction can support the conclusion that the parties negotiated an equitable mortgage. The agreement discloses that the relationship of the parties was that of vendor and vendee, not mortgagor and mortgagee. The contract itself is the best evidence of the parties' intentions. We will not disregard the parties' written agreement.
 
 
 20
 The oral testimony at the trial confirmed the parties' intentions. Buckantz's attorney testified that the agreement "is an outright agreement to buy and sell a restaurant." The district court found that Buckantz's testimony revealed that he "did not consider himself the owner" and that he "viewed the transaction as an option to purchase which he intended to exercise only in the event the restaurant business went well." There is sufficient credible evidence to support the district court's conclusion that the parties did not intend an equitable mortgage.
 
 
 21
 Buckantz cannot command specific performance because time was, in fact, of the essence, and Buckantz failed timely to satisfy his obligation under the agreement. It cannot be disputed that Buckantz was in default on March 1, 1983. Gottesman gave Buckantz two extra months, from March 1 to May 1, 1983, to take advantage of the purchase option. Buckantz had received notice that after May 1, he would be allowed to remain on the premises only as a lessee, without an option to purchase.
 
 
 22
 Buckantz's reliance on paragraph 16 of the lease for the proposition that he had a reasonable time to cure his default is misplaced. The lease was expiring on March 1, 1983 due to the termination of its term, not due to a default by Buckantz. Even if paragraph 16 did apply, two months to find financing, in addition to the previous annual extensions, constituted a reasonable time.
 
 
 23
 Finally, the record does not support Buckantz's contention that he was ready and willing to perform by May 1, 1983. Buckantz and his attorney both admitted that as of May 11, 1983, Buckantz had not secured the financing. The district court's finding that Buckantz could not perform, and therefore was not entitled to specific performance, was not clearly erroneous. We affirm the judgment for Gottesman in the Buckantz Case.[4]
 
 III
 
 24
 * Buckantz's next claim is that the district court did not have jurisdiction over the Eviction Case under either 28 U.S.C. Sec. 1331 or 28 U.S.C. Sec. 1332, since the complaint alleged no federal question and there was no diversity. Both parties agree that there is no diversity jurisdiction; Buckantz and Gottesman are Ohio residents. The dispute is over whether the eviction action under state law was properly pendent to the federal claims in the Buckantz Case, so as to give the court jurisdiction under Sec. 1331. We hold that jurisdiction was proper.
 
 
 25
 The parties had agreed in a July 8, 1987 settlement agreement, which was formalized in the district court's July 14, 1987 Stipulated Order (the Order), to let the court hear any action pertaining to the occupancy or possession of the Mon Ami restaurant.[5] Buckantz contends, however, that "no action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant ...," citing Insurance Corp. of Ireland, Ltd. v. Compagnie Des Bauxites, 456 U.S. 694, 702 (1982).
 
 
 26
 Buckantz argues that under United Mine Workers v. Gibbs, 383 U.S. 715 (1966), the elements necessary to invoke pendent jurisdiction were not present. Gibbs concerned "the resolution of a plaintiff's federal- and state-law claims against a single defendant in one action." Owen Equipment and Erection Company v. Kroger, 437 U.S. 365, 370 (1978) (emphasis added). Since Gottesman's complaint did not allege both "federal- and state-law claims," Buckantz claims that it cannot suffice to invoke pendent jurisdiction.
 
 
 27
 Under the well-pleaded complaint rule, jurisdiction must be ascertainable from the face of the plaintiff's well-pleaded complaint. Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1 (1983). State-law causes of actions do not fall within the original jurisdiction of the federal courts. Id. at 10. Buckantz claims that pendent jurisdiction is secondary and can only arise after original jurisdiction has been established. He argues that Gottesman cannot establish original jurisdiction by incorporating federal-law claims made by Buckantz in another case.
 
 
 28
 However, the eviction action and the Buckantz Case "derive from a common nucleus of operative fact." Gibbs, 383 U.S. at 725. The district court had ancillary jurisdiction because it had previously determined issues central to the Eviction Case.[6] See Nanavati v. Burdette Tomlin Memorial Hospital, 857 F.2d 96, 105 (3d Cir.1988), cert. denied, 109 S.Ct. 1528 (1989). Any decision in the Eviction Case would have required an interpretation of the district court's opinion in the Buckantz Case.
 
 
 29
 The district court clearly would have had jurisdiction over the Eviction Case had it been brought as a counterclaim in the Buckantz Case. Ohio law, however, prohibited Gottesman from bringing the eviction claim as a counterclaim. Ohio Rev.Code Sec. 1923.05 and Sec. 1923.06 require that an action for forcible entry and detainer be brought by a separate complaint and summons. In order to meet the statutory requirements, therefore, Gottesman was compelled to bring a separate action against Buckantz. We have been presented with no evidence that the Ohio rule was intended to have any jurisdictional significance. We believe that these provisions of the statute were designed primarily to assure tenants of actual notice to leave.[7] We hold that the Ohio procedural rule cannot defeat federal jurisdiction in this case. Functionally, the Eviction Case is a counterclaim that would have been asserted in the Buckantz Case but for the procedural bar.
 
 
 30
 Furthermore, the district court already was familiar with the case through its prior proceedings, and additional fact finding was unnecessary. By asserting jurisdiction over the Eviction Case, the district court acted in the interest of judicial economy. See Argento v. Village of Melrose Park, 838 F.2d 1483, 1490 (7th Cir.1988). For reasons of both fairness and efficiency, we hold that the district court properly exercised subject matter jurisdiction over the Eviction Case.
 
 B
 
 31
 Buckantz argues that the district court erred by denying his motion for summary judgment in the Eviction Case because the parties had agreed that Gottesman would have no right of eviction until the Buckantz Case concluded. Since several counts in the Buckantz Case have not yet been tried, Buckantz claims that he cannot be evicted.
 
 
 32
 The July 8, 1987 settlement agreement between Buckantz and Gottesman states that:
 
 
 33
 the parties wish to settle the payment procedure and the amount of the monthly payments to be made by the Plaintiffs to the Defendants and to the escrow fund that is established by the terms of this Agreement during the pendency of this action....
 
 
 34
 Buckantz claims that the terms of the settlement agreement clearly reflect an understanding between the parties that Buckantz would continue to make rent payments to Gottesman and separate payments to the escrow fund until the first lawsuit concluded. He argues that the agreement does not allow for the payment procedure to be curtailed (and hence does not release Gottesman to sue for forcible entry and detainer) after only Buckantz's claim for specific performance was resolved.
 
 
 35
 Although the language of the payment procedure is vague, the settlement agreement did not ensure Buckantz a continued right of possession of the restaurant property during the pendency of any claim in the Buckantz Case. The district court specifically found that the interpretation urged by Buckantz was wrong and was not the intention of the parties, or of the court in its Order incorporating the settlement agreement.
 
 
 36
 The district court had the authority to interpret its Order. Kuenz v. Goodyear Tire & Rubber Company, 617 F.Supp. 11, 13 (N.D.Ohio 1985). The district court, in interpreting its Order, found that the Order gave no right of possession to Buckantz. The terms of the Order provided a payment method by which the disputed amount of rent could be paid until the court determined the correct amount of rent. The district court determined that "[t]he purpose of the stipulated order was to allow Buckantz to remain on the property by paying rent until the issue of ownership was decided.... When the Court ruled Buckantz was not entitled to possession, plaintiff acquired the right to refuse further rental payments and take possession of the property." Given the soundness of this interpretation and the authority of the district court to make this interpretation, Buckantz was not entitled to summary judgment in his favor.
 
 C
 
 37
 Buckantz's final argument is that the court erred by granting Gottesman's motion for summary judgment in the Eviction Case because Gottesman's eviction action was time-barred. Ohio Rev.Code Sec. 1923.01(B) provides that "[a]n action shall be brought under this Chapter within two years after the cause of action accrues." Buckantz claims that Gottesman's cause of action, if any, accrued on February 28, 1983 when Buckantz became a holdover tenant. Gottesman did not file his eviction action, however, until March 15, 1989.
 
 
 38
 Ohio Rev.Code Sec. 1923.04(A) required Gottesman to serve Buckantz with a 3-day notice to leave the premises before he could file his eviction action. Although Gottesman did file his action within 2 years after the expiration of the 3-day notice period (which ended on February 15, 1989), Buckantz argues that Gottesman should not be able to prevent the limitation period from running by delaying service of the notice to leave.
 
 
 39
 We find the reasoning of the district court compelling:
 
 
 40
 Buckantz was a holdover tenant on a month to month basis. He was legally on the premises each month until the lessor decided to terminate the lease which could be any month the lessor chose. If the two year statute of limitations accrued at the time Buckantz became a holdover tenant on a month to month basis, after two years, the lessor would be forced to keep the tenant as long as the tenant wanted to stay. Until service of the three day notice, there was no violation of Chapter 1923.
 
 
 41
 Gottesman could not bring his action until Buckantz had disregarded the 3-day notice to leave that was served on January 24, 1989. The right of action did not accrue until February 15, 1989, the date as extended in the 3-day notice. One month later, well within the 2-year period, Gottesman brought his eviction action. A landlord does not lose the right to maintain an action for forcible entry and detainer by permitting a holdover tenant to remain on the premises. The interpretation urged by Buckantz would effectively transform Ohio Rev.Code Sec. 1923.01(B) into a 2-year (or 4-year, as Buckantz alternatively argues) adverse possession statute.[8] That is not the purpose of Sec. 1923.01(B). Gottesman was within his rights to permit Buckantz to continue to lease the restaurant without running the risk that Buckantz could usurp his ownership interest. Summary judgment for Gottesman was proper.
 
 
 42
 The judgment of the district court in case no. 89-3452 and case no. 89-3699 are affirmed.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 This first lawsuit will be referred to as the "Buckantz Case."
 
 
 [2]
 This second lawsuit will be referred to as the "Eviction Case."
 
 
 [3]
 Buckantz's former counsel admitted on cross examination that he wrote a letter on May 11, 1983 on behalf of Buckantz, stating that Buckantz was still trying to obtain financing
 
 
 [4]
 Buckantz also challenges several alternative findings on which the district court based its decision. The district court found that there was a mutual abandonment of the purchase agreement or that Buckantz was barred by the doctrine of laches. In light of our conclusion that Buckantz failed to perform according to the terms of the contract, we need not reach these issues. Buckantz also argues that the district court erred by not admitting certain parol evidence concerning the intentions of the parties to create a mortgage. Buckantz fails, however, to specify any examples of testimony that were not admitted. We therefore find no merit in this claim
 
 
 [5]
 Paragraph 1 of the Order states that "[t]he parties shall not file any actions against the other concerning any matters relating to the ownership, occupancy or possession of Mon-Ami in any court other than the United States District Court for the Northern District of Ohio during the pendency of [the Buckantz Case], so long as all other terms and conditions of the Settlement Agreement are complied with by the parties[.]"
 
 
 [6]
 Jurisdiction is ancillary, not pendent, because the claim over which jurisdiction is disputed belongs to the defendant, not the plaintiff, and operates as a counterclaim to the specific performance claim
 
 
 [7]
 Sec. 1923.06(B), for example, requires that the summons contain specified language, conspicuously printed, notifying tenants of their rights under the statute
 
 
 [8]
 We reject Buckantz's assertion at oral argument that Gottesman's rights would not be abridged if he were denied recourse to Sec. 1923 since he would be free to pursue other remedies, such as a suit for quiet title, in the absence of Sec. 1923. Buckantz has not convinced us that Sec. 1923 should be interpreted to mean anything other than what it plainly states--that a landlord has two years after giving notice to bring an eviction action under that statute